THE STATE OF NEVADA, Petitioner, v. THE NINTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF DOUGLAS, DEPARTMENT I and THE HONORABLE DAVID R. GAMBLE, JUDGE, Respondent, and ALEJANDRO C., a Minor, Real Party in Interest.

No. 19350

November 2, 1989

781 P.2d 776

*Brent Kolvet,* District Attorney, Douglas County, for Petitioner.

*Ronald J. Bath,* Reno, for Respondent.

## OPINION

By the Court, STEFFEN, J.:

The sole issue presented by this original mandamus proceeding is whether NRS 62.080[1] empowers the juvenile court to certify

---

[1]NRS 62.080 provides:

> If a child 16 years of age or older is charged with an offense which would be a felony if committed by an adult, the juvenile division of the

and transfer to the adult criminal justice system minors sixteen years of age or older who commit felonious offenses prior to their sixteenth birthday. We hold that it does.

The minor whose conduct prompted these proceedings was approximately one month shy of his sixteenth birthday when he allegedly committed six serious offenses, each of which would have been a felony if committed by an adult. After an investigation, the State filed a petition alleging delinquency with the juvenile court on July 18, 1988. The petition charged the minor, Alejandro C., with sexual assault, attempted sexual assault, two counts of battery with intent to commit sexual assault, and two counts of burglary. Thereafter, on August 9, 1988, the State filed a motion pursuant to NRS 62.080 to certify Alejandro C. for trial as an adult. The juvenile judge denied the State's motion on grounds that the juvenile court was without jurisdiction to certify a minor for offenses committed before age sixteen. The State subsequently challenged the ruling of the juvenile court by filing a petition for writ of mandamus in this court.

As a general rule, courts are enjoined to construe statutory language so "as to give effect to, rather than nullify, an act of the legislature." State ex rel. Kaufman v. Martin, 31 Nev. 493, 499, 103 P. 840, 842 (1909). The operative phrase used by the legislature in conferring certification jurisdiction on the juvenile court consists of the words "is charged with." Paraphrasing the key language, if a juvenile "16 years of age or older *is charged with* an offense which would be a felony if committed by an adult" the juvenile court may either retain jurisdiction or transfer the child to the adult criminal system (emphasis ours). If the legislature had intended to limit certification proceedings to juveniles who *commit* felonious offenses after reaching age sixteen, it would have so provided.

Although the language of the statute is clear, the ·eventual resolution of this proceeding was delayed as a result of internal debate and concern over the possibility that a frank recognition of the statutory language would facilitate prosecutorial manipulation of the juvenile justice system by merely sitting back and waiting for a youth's sixteenth birthday before charging him or her with

district court, after full investigation, may in its discretion retain jurisdiction or certify the child for proper criminal proceedings to any court which would have trial jurisdiction of such offense if committed by an adult; but no child under 16 years of age may be so certified. After such a child has been certified for proper criminal proceedings and his case has been transferred out of the juvenile division, original jurisdiction of the person rests with the court to which the child has been certified and the child may thereafter petition for transfer back to the juvenile division only upon a showing of exceptional circumstances.

an offense committed at an earlier age. Ultimately, and with due respect for the views of the dissenting justice, we concluded that there are substantial safeguards in place to minimize, if not eliminate, such a contingency.

The statute provides that a juvenile judge may not exercise his or her discretion on the issue of certification until *after a full investigation*. Once the investigation is complete, the juvenile judge has the discretion to reject the State's request for certification and to retain jurisdiction over the juvenile offender. And the judge is expected to appropriately weigh unpersuasive efforts by the prosecution to explain substantial delays in dealing with a juvenile chargeable with serious offenses. Moreover, we have provided the juvenile court with extensive guidelines to assist in determining whether to transfer a child to the adult criminal system. *See* In the Matter of Seven Minors, 99 Nev. 427, 664 P.2d 947 (1983). We are confident that our juvenile judges will give careful consideration to those guidelines in reaching a decision regarding certification. If, after analyzing the results of the "full investigation" required by the statute and applying the guidelines specified in *Seven Minors,* the juvenile judge abuses his discretion, this court remains as an additional safety valve to prevent unwarranted prosecutions of juveniles in adult criminal proceedings.

The statute as enacted by the legislature provides a desirable flexibility in the handling of youthful offenders. In *Seven Minors,* we observed that "the transfer process is based upon the sound idea that there is no arbitrary age at which all youths should be held fully responsible as adults for their criminal acts and that there should be a transition period during which an offender may or may not be held criminally liable, depending on the nature of the offender and the offense." *Id.* at 99 Nev. 430, 664 P.2d 949 (footnote omitted). Thus, in a given case, a juvenile judge may determine that a minor who has committed a serious offense at age fifteen, but who was not identified as the offender until shortly before or sometime after age sixteen, may fully satisfy the criteria for certification. In other cases involving the same or similar age components, the juvenile judge may determine that the complex of factors impacting the youthful miscreant and the demands of society warrants retention of the minor in the juvenile justice system.

Giving effect to the literal language of the statute is also consonant with Nevada law that makes children between the ages of eight and fourteen years subject to criminal accountability and punishment if there is clear proof that such children knew the

wrongfulness of their offenses at the time they were committed.[2] Logically, then, certification proceedings should at least be theoretically available where felonious offenses have been committed by eight-year-olds who are identified as the perpetrator shortly before or sometime after their sixteenth birthday. Although petitions for certification of sixteen-year-olds who committed their offenses at age eight would be so rare as to approach historical nonoccurrence, petitions against minors who committed their felonious offenses as physically strong, violent fifteen-year-olds could, in today's world, be anticipated with frightening frequency.

Moreover, the statutory language and scheme selected by the legislature is responsive to trends in juvenile crime. States are reducing the age of minors certifiable to criminal courts for felonious crimes. The Appendix to § 4.10 of the Model Penal Code & Commentaries (1985) reflects that children committing serious crimes (i.e., felonies) are transferable to criminal courts in at least thirty-four states at ages varying between thirteen and fifteen years.[3] Only eight states restrict waiver to children committing crimes after their sixteenth birthday.[4] Such trends among the states are hardly surprising given the fact that persons under the age of eighteen commit approximately twenty percent of the violent crime and forty-four percent of serious property crimes nationwide. Comprehensive Crime Control Act of 1983: hearings before the Subcommittee on Criminal Law of the Committee on the Judiciary, United States Senate, Ninety-eighth Congress, first session on S. 829, p. 551 (1983). Moreover, according to statistics covering the year 1979, minors under the age of fifteen committed 206 homicides, in excess of 1,000 forcible rapes and more than 10,000 robberies and 10,000 aggravated assaults. *Id.*

---

[2]NRS 194.010, in pertinent part, reads:

Persons capable of committing crimes. All persons are liable to punishment except those belonging to the following classes.
1. Children under the age of 8 years.
2. Children between the ages of 8 years and 14 years, in the absence of clear proof that at the time of committing the act charged against them they knew its wrongfulness.

[3]Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Illinois, Indiana, Iowa, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, New Hampshire, New Jersey, North Carolina, Ohio, Oklahoma, Pennsylvania, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, West Virginia and Wyoming.

[4]Delaware, Hawaii, Kansas, Montana, North Dakota, Oregon, Rhode Island and Wisconsin.

at 554 (citing the United States Department of Justice, *Source-book of Criminal Justice Statistics,* 1981).

Finally, we are confident that if the legislature intended to limit the availability of transfer proceedings to minors who have *committed* felonious offenses at age sixteen or older, it will be prompted by this decision to amend the statute accordingly. Because the language of the existing statute is clear and provides a reasonable, flexible scheme for dealing with juveniles involved in the commission of serious offenses we are unwilling to alter the scope and effect of the statute in the name of statutory construction.

In light of the above, we conclude that petitioner's request for a writ of mandamus is justified. Accordingly, the clerk of this court shall issue a writ of mandamus directing the respondent to reinstate the State's petition to certify Alejandro C. for trial as an adult pursuant to NRS 62.080 and to decide the petition in accordance with the procedure specified in this opinion.[5]

YOUNG, C. J., and MOWBRAY, J., concur.

SPRINGER, J., dissenting:

Nevada's juvenile court act was enacted in 1911. At that time the juvenile court was empowered "in its discretion, in *any* case of a delinquent child [to] permit such child to be proceeded against in accordance with the [criminal] laws. . . ." 1911 Nev. Stats., ch. 197 § 10, at 388 (our emphasis). In 1949 this provision was amended so as no longer to allow "any" child to be tried as an adult, but, rather, to limit the process to more mature children who commit serious crimes after they have become "16 years of age or older."

For fifty years now our juvenile courts have from time to time in their "discretion" removed from the grace of the juvenile court certain juveniles who commit crimes at ages sixteen and seventeen. No child who has committed a crime under the age of sixteen has since the enactment of this statute in 1949 been subject to transfer proceedings to the adult court. The reason for this is that everyone concerned has understood that the purpose of the statute is to take a few of the more serious or incorrigible older offenders, sixteen and seventeen, out of the juvenile court and hold them accountable as adults. Perhaps in today's world the legislature should consider lowering the statutory age of adult transfer to fifteen or even lower, but the law as it stands and as it has stood for the past fifty years sets "16 years of age or older"

---

[5]THE HONORABLE ROBERT E. ROSE, Justice, did not participate in the decision of this appeal.

as the determinative time. The result of the majority opinion is to revert to the law as it was in 1911. It is most difficult for me to believe that when the statute was amended in 1949 to set the sixteen year age limitation, the legislature intended to keep the same "any case," any age application of the statute that had been in effect since 1911.

Understandably outraged by the seriousness of the charge in this case, the Douglas County prosecutor seeks to change the law by urging a rather tortured interpretation of the law that would allow the juvenile court to transfer a child for adult prosecution no matter at what age the child committed the offense. That a prosecutor would press this point to the court is understandable. That this court would reverse the trial court's correct holding and adopt this position is not understandable to me.

The majority opinion interprets the juvenile certification statute, which allows for transfer to the adult court of certain juveniles who commit crimes after they have passed their sixteenth birthday, in a manner that does violence to the meaning and intent of the juvenile court act.

Now adult criminal prosecutions may be brought against juveniles no matter at what age they happen to violate the criminal law. The juvenile court act does not provide this and does not mean this.

My dissent is based on these grounds:

1. *The Issue Has Already Been Decided.* In In re Three Minors, 100 Nev. 414, 417, 684 P.2d 1121, 1123 (1984), we characterized the "triggering event" for the institution of transfer proceedings as the *"commission* of a felonious offense by a juvenile 16 years of age or older." This language belies the "waiting game" espoused by the majority opinion, which allows adult criminal prosecution to be levied against children who commit crimes at tender years.[1]

2. *Any Ambiguity In the Statute Should Be Resolved in Favor of the Juvenile.* "[A]n ambiguous statute must be construed liberally in favor of the accused." Sheriff v. Lang, 104 Nev. 539, 541, 763 P.2d 56, 58 (1988). If this statute were to be construed in favor of the juvenile, he would be treated as fifteen-year-old offenders have been treated for fifty years and would not be subject to adult prosecution. The only question, then, is whether the statute is ambiguous. The majority says that "the language of the statute is clear." I do not think so. The majority sternly

---

[1] I am very much aware of the majority's prediction that this probably will not happen, but I am very reluctant to believe that the legislature would have enacted a law that would allow it to happen.

proclaims that the words "charged with an offense" can have only one possible meaning and that is the meaning consistent with its view that adult transfer proceedings can be "charged" at any time after a juvenile's sixteenth birthday no matter when the delinquency was committed. With due respect to my colleagues I see many possible interpretations of the words "charged with an offense." I am somewhat puzzled by the ease with which the majority resolves this issue, seeing no shades of meaning in the phrase and admitting to no doubt about what the majority asserts to be clear and unequivocal legislative intent. All we have to do is look at a legal dictionary to see that the word *charged* is not employed in its usual sense. As noted below, the word *charged* has a number of possible meanings, most of which are inconsistent with the majority view.[2] The most reasonable interpretation of the language in question and the only interpretation consistent with juvenile court jurisprudence is the interpretation heretofore made in *Three Minors,* which refers to, the "charged *commission* of a felonious offense *by* a juvenile 16 years of age or older." (Emphasis added.) This means to me that transfer proceedings can be effected by *charging* that a felonious offense has been committed *by* whom?—by "a juvenile 16 years of age or older." That only offenses committed by juveniles sixteen years or older are subject to prosecution in the adult court is as clear to me as it is unclear to my colleagues. I hope that such diversity of opinion can at least be taken to show that the language is in some degree ambiguous. To me it is rather obvious that there is absent in this case the necessary "commission of a felonious offense *by* a juvenile 16 years of age or older." What we have here, rather, is "commission of a felonious offense *by*" a fifteen year old and not by one sixteen years or older. If I were to go so far as to say, as has the majority, that the "language of the statute is clear," I would simply say, as we did in *Three Minors,* that "charged with an offense" refers to the charging event mentioned in *Three Minors,* namely, the "charged commission" of a felonious offense "by a juvenile 16 years of age or older." I do not, however, make such a claim of absolute clarity and say only that

---

[2]The word *charged* is necessarily anomalous and out of place in the juvenile court act. The legal meaning of charge is the "accusation of a crime by a formal complaint, information or indictment." Black's Law Dictionary 211 (5th ed. 1979). Juvenile proceedings are noncriminal in nature, NRS 62.193, and no charge can be brought against a juvenile until after transfer. Some meaning other than that assigned by the dictionary must be given to the word *charged* in this context, and I am afraid I do not know that meaning. A *charge* could mean the filing of the juvenile court petition under NRS 62.130 or it could mean the institution of the transfer or certification proceedings under NRS 62.080; or it could have some amorphous meaning like "suspected of" or "accused." The one thing that the word *charged* is not is *clear.*

because it is not entirely clear what "charged with an offense" means in the context of the juvenile court act, and because it might even mean that the prosecutor can wait until a younger juvenile reaches sixteen before initiating proceedings directed toward adult prosecution, the ambiguity must be resolved in favor of the juvenile; and the juvenile must, therefore, be retained in the juvenile court, as properly held by the district judge.

3. *Consistency with Juvenile Court Jurisprudence.* Unlike my colleagues in the majority, I will, as said, admit to the possibility of my reading wrongly the ambiguous language in question, but I believe I am safe in saying that my view (namely, as in *Three Minors,* that the "triggering event" for transfer is the "commission of a felonious offense by a juvenile 16 years of age or older") is more in harmony with the intent and purpose of the juvenile court act than is the view that it does not matter at what age the crime was committed. For example, in the Comments to Section 4.10 of the Model Penal Code (Tent. Draft No. 7, 1957),

> [a]s to offenders under 16 at the time of the offense it is implicit in the treatment of the exclusive jurisdiction of the juvenile court as a substitute for the old rule of incapacity that *the age at the time of the offense should be determinative.* It would *obviously conflict with the ameliorative purpose of the 16 year criterion* to permit passage of the time between the offense and prosecution to sustain a criminal proceedings; time worked no such effect in cases of non-age at common law.

(Emphasis added.)

I am afraid that the decision filed today does "obviously conflict with the ameliorative purpose of the 16 year criterion." The purpose of placing a limitation on the juvenile courts as to who can be sent to adult court is to restrict adult transfer to those who commit serious crimes when they are older, more mature and hence properly accountable as adult persons. It is the age, maturity and state of mind at the time the crime is committed that is being addressed by the age limitation not the age, maturity and state of mind at the time the prosecution decides to bring "charges." The idea that a child of twelve or thirteen who commits a crime can be later prosecuted as an adult when he grows up a bit is about as repugnant an idea as can be conceived of insofar as the ideals of the juvenile court are concerned. Of course, the majority may be right, nothing so untoward or unjust as this would ever occur in the prosecution of those who commit crimes.

I have no quarrel with the majority's recitation of statistics relating to juvenile crime, and perhaps the legislature should

reduce the age at which a transferable juvenile must commit a felonious act; but this court should not be making this kind of change in the law.